Affirmed.

**In re NETH.**

**Patent Appeal No. 2757.**

Court of Customs and Patent Appeals.
June 1, 1931.

H. A. Toulmin and H. A. Toulmin, Jr., both of Washington, D. C. (James T. Newton, of Washington, D. C., of counsel), for appellant.

T. A. Hostetler, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner, rejecting claims 1, 2, 3, 4, 5, and 9 of appellant's application for failure to define patentable invention.

Claims 1, 4, and 9 are illustrative, and read as follows:

"1. In an autographic register having a plurality of sheets with spaced perforations, means to engage and eject said sheets, means to render said engaging and ejecting means inoperative, reciprocating means mounted independently of said engaging and ejecting means to align said sheets and to move said aligned sheets into final position by the aligning means, whereupon the engaging means re-engages the sheets and the aligning means is withdrawn, and means to withdraw the aligning means."

"4. In an autographic register having a plurality of sheets with spaced perforations, actuating means, means to eject and engage the plurality of sheets, means to render the engaging and ejecting means temporarily inoperative and to restore said means to operation at a predetermined time, and reciprocating means mounted independently of said engaging and ejecting means to align the sheet and move the sheets in aligned condition to their final position where they are engaged by the clamping and ejecting means, means for actuating said aligning means to move it to a position to be inserted in the paper to move the paper to position to be re-clamped by the engaging and ejecting means, to withdraw the aligning means at that point from the paper, to restore it to its initial

position for another aligning and paper moving operation, said means to render the ejecting means inoperative, to actuate the aligning means and to actuate the ejecting means being commonly operated from the actuating means."

"9. In an autographic register having a plurality of sheets with spaced perforations, means for actuating the sheets, means for rendering the actuating means inoperative during a portion of the cycle of operations, aligning pins located adjacent the actuating means during that portion of the cycle of operations for pushing the aligning pins upwardly into said perforations to align the sheets and after alignment moving said pins forwardly to the final position of the sheets, at which time the ejecting means re-engage the sheets and withdraw the pins from the sheets."

The references cited are:

Sherman, 1,525,664, February 10, 1925.

Sherman, 1,445,108, February 13, 1923.

The invention relates to an autographic register of the type having a reciprocating pin carriage for engaging the file perforations in the sheets, moving the sheets along a short distance after the main feeding operation by the ejecting rolls, and aligning the sheets during such auxiliary feeding operation which brings the sheets into proper position. During the aligning operation the rolls are spread apart by curved arms, the end portions of which are positioned beneath the upper roll and the lower portions of which ride on cams on a shaft.

With regard to claims 1 to 3, inclusive, the board in its decision said: "Claims 1 to 3, inclusive, are deemed unpatentable over Sherman, No. 1,525,664. The means to engage and eject the sheets is rendered inoperative by the provision of the spaces between the ends of the segments 43, 46 and also the disks 42 for holding the upper roll from downward movement. The claims are broadly drawn and do not attempt to differentiate from the reference by statements of specifically different structures but rely on the broad definitions of the structures as means qualified by statements of function. The stated functions are performed by the patented machine and it is believed that the structure disclosed in said machine fairly responds to the broad definitions of structure included in these claims."

Appellant's counsel earnestly contends that said Sherman patent does not have the element recited in said claims of "means to render said engaging and ejecting means inoperative." This contention is based upon the argument made by him that "the absence of a portion of the periphery of Sherman's segment is not the equivalent of appellant's positive means" (the arms and cams for acting on the roller 16 shown in appellant's drawings) to render the ejecting means inoperative.

Upon this point we agree with the solicitor for the Patent Office, who contends that the function of ceasing to feed is in the Sherman device, by reason of the shape of the segmental feed discs, and that it is obvious that the element or means for performing the function exists positively and not negatively. For this reason, we do not consider the case of Ex parte Davin, 100 O. G. 452, applicable, which held that a mere opening, being an intangible thing, should not be included as an element by itself.

We find no error in the decision of the board as to said claims 1 to 3, inclusive.

As to claim 4, we agree with the board's conclusion that it contains nothing patentable over the Sherman patent, No. 1,525,664, in view of the Sherman patent, No. 1,455,-108.

Claim 5 contains, in addition to the elements in claim 4, the following: " * * * and independent means to render the ejecting and clamping means temporarily inoperative to permit of independent adjustment of the sheets."

With regard to claim 5, error is assigned that the board rejected it without citing any reference to meet it. The decision of the board affirmed that of the examiner as to claim 5, and the examiner, with regard to claims 4, 5, and 6, said: " * * * Claims 4, 5 and 6 contain certain limitations with respect to the roller separating device which distinguished them from the reference, and as above indicated, were rejected on the ground that no invention is involved in substituting in the principal reference any other roller separating device than that originally shown. This substitution involves no new function in the present case, and if the corresponding limitations of the claims render them patentable, patents may be multiplied indefinitely by the expedient of providing other roller separating means and contrasting the claims to same from Sherman merely by limitations relative thereto."

The solicitor for the patent office, in his brief, points out that the Sherman patent, No. 1,445,108, provides, for the purpose of

raising the tension roll by hand, a cam pivoted to the side of the casing, which cam is adapted to be pressed upwardly by a pin carried on a lever, which pin extends out far enough to be grasped in the fingers, and we agree with the examiner that no invention is involved in the last element of claim 5 for the reason that it required no inventive skill to use the feature above described with the device of the other Sherman patent, No. 1,525,664.

We have carefully examined claim 9, and we agree with the board's conclusion that said claim contains nothing patentable over Sherman's patent, No. 1,525,664.

Before an appeal was taken from the decision of the examiner to the Board of Appeals, and after a final rejection, appellant submitted to the Commissioner of Patents proposed claims, to be numbered 11 to 16, for purposes of appeal. The examiner refused to admit the claims and the commissioner denied appellant's petition to enter said claims. Appellant asks us to consider these proposed claims. In the reasons for appeal, no error was assigned with respect to the refusal to enter said claims, and they cannot be considered by us. In re Smith, 36 F.(2d) 522, 17 C. C. P. A. 752.

The decision of the Board of Appeals is affirmed.

Affirmed.